AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
DERRICK DAVON HUDNELL
LEONDREL ANDREW WHITLEY

*Defendant(s)*

Case No. 3:26-mj-1389-SJH

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 20, 2026 in the county of Duval in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 922(o) and 2 | Possession or transfer of a machinegun, aiding and abetting |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

[signature] T7609
*Complainant's signature*

Eugene Tolbert, TFO, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-9-26

[signature]
*Judge's signature*

City and state: Jacksonville, FL

Samuel J. Horovitz, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Eugene Tolbert, being duly sworn, deposes and states as follows:

## I. INTRODUCTION

### Identity of Affiant

1. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on the ATF Violent Crimes Task Force in Jacksonville, Florida. I have been a TFO with ATF since November 2024. Additionally, I am a certified law enforcement officer in the State of Florida and have been employed by the St. Johns County Sheriff's Office (SJSO) as a sworn law enforcement officer for over 25 years. I have been assigned to the Criminal Investigations Division as a Detective or Detective Supervisor with SJSO for approximately 15 years. Currently, I am a Sergeant in the Major Crimes Unit at SJSO. As a TFO, my duties and responsibilities include investigating violations of federal firearms laws and the Controlled Substances Act. I have successfully completed multiple investigative training courses concerning a wide variety of investigative techniques and have investigated many criminal cases throughout my career, including cases involving drugs and firearms, which have led to convictions in both state and federal court. I am familiar with and have used a variety of investigative methods, including management of confidential informants, visual surveillance, electronic surveillance, cellular exploitation and analytics, informant interviews, interrogations, social media investigations, and undercover operations. I have training and experience related to the use of cellular communication devices with remote

storage, as well as social media accounts and the role those devices or accounts and stored data play in criminal investigations related to a variety of offenses, including firearms and drug trafficking.

2. The information in this affidavit is based on my personal knowledge, as well as information, knowledge, and observations of other federal, state, and local law enforcement officers. This affidavit does not contain all the information and evidence obtained during this investigation but rather contains facts and evidence sufficient to support the issuance of a criminal complaint.

3. I make this affidavit in support of an application for the issuance of a criminal complaint for Derrick HUDNELL and Leondrel WHITLEY, charging a violation of 18 U.S.C. §§ 922(o) and 2, illegal possession and transfer of a machinegun.

**Statutory Authority**

4. As detailed herein, HUDNELL and WHITLEY are subjects of this investigation, which relates to HUDNELL and WHITLEY violating federal law by unlawfully transferring firearms to persons known and unknown to me, in violation of 18 U.S.C. §§ 922(o) and 2. I know that under 18 U.S.C. § 922(o), it is unlawful for any person to transfer or possess a machinegun. I also know that a machinegun is any weapon that shoots, is designed to shoot, or can be readily restored to shoot more than one shot, without manual reloading, by a single function of the trigger. 26 U.S.C. § 5845(b). "Machinegun" within the meaning of 26 U.S.C. § 5845(b) also includes

"…any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun…"

## II. PROBABLE CAUSE

### Basis of Knowledge

5. In August 2026, I identified HUDNELL and WHITLEY as participants in a firearms trafficking conspiracy involving firearm and machinegun conversion device (MCD)[1] sales in the Jacksonville, FL area.

6. On August 20, 2026, two ATF special agents (UC1 and UC2), acting in an undercover capacity and operating an undercover vehicle (UCV), accompanied by a confidential informant (CI), met with HUDNELL and WHITLEY at 5301 Norwood Ave, Jacksonville, FL, which is in the Middle District of Florida. HUDNELL had previously communicated with the CI and arranged for the UCs and CI to purchase a firearm and two MCDs from WHITLEY. During the undercover transaction, the UCs and CI were equipped with audio/video recording equipment to record the events as they occurred. I have reviewed the recordings and discussed the events that are described below with the UCs.

7. At approximately 5:59 p.m., the UCs and CI arrived in the parking lot of 5301 Norwood Avenue, and UC1 instructed the CI to call HUDNELL to advise that

---

[1] Based on my training and experience, I know that an MCD, also commonly referred to as a "Glock switch," "button," or "drop-in auto sear," functions by applying force to a semi-automatic pistol's trigger bar (disconnector) to prevent it from limiting fire to one round of ammunition per trigger pull. Normally, in a semiautomatic pistol, after firing, the trigger bar catches the firing pin until the trigger is released, but when depressed by the MCD, it does not catch. An MCD thus converts the weapon into a machine pistol capable of automatic fire.

they had arrived there. UC1 then took the CI's phone to speak with HUDNELL. Originally, HUDNELL, the UCs, and CI had agreed to meet at a different location. After a brief conversation between UC1 and HUDNELL, HUDNELL agreed to meet at the Norwood Ave address so the MCDs could be examined before purchasing, and HUDNELL confirmed he was on his way to meet with the UCs and CI.

8. A short time later, UC1 observed a small, white Chevrolet sedan enter the lot and approach the UCV. UC1 recognized this vehicle as a vehicle HUDNELL was seen operating in the past. HUDNELL parked his vehicle on the driver's side of the UCV. Shortly after that, another small, white sedan parked on the passenger side of HUDNELL's vehicle. WHITLEY was operating the second white vehicle. UC1 exited the UCV to meet with HUDNELL, who had also exited his vehicle. WHITLEY exited his vehicle and walked over to where UC1 and HUDNELL were standing. They all spoke briefly, and then WHITLEY got into the rear passenger side of the UCV. UC1 got back into the UCV, and HUDNELL remained standing outside.

9. WHITLEY then presented two silver-colored metal MCDs and proceeded to explain that they were more robust and primarily made to accommodate 10mm and .45 caliber Glock pistols. WHITLEY continued to explain the functionality of the MCDs, ease of installation, and that they were brand new. The UCs remarked that these MCDs were fully assembled, and WHITLEY explained that the MCDs would work well and allow the firearm that they were affixed upon to function in semi and full-automatic firing. During the conversation about the MCDs, UC1 confirmed

with WHITLEY that the price for the MCDs was $400 apiece for a total of $800. WHITLEY confirmed this and stated that he would need to use the $800 to go and pay for the "chop" and bring it back to the UCs. Based on my training and experience, I know that "chop" is street vernacular for firearms, typically AR-style and AK-style pistols or rifles. The UCs understood this to mean that WHITLEY needed to go retrieve a firearm he intended to sell from an unknown associate. UC1 paid WHITLEY $800 in ATF agent cashier funds, and WHITLEY stated that he would return shortly. The UCs replied that they would wait for his return. Prior to exiting the UCV, the UCs asked about the price of the "chop." WHITLEY ultimately conferred with HUDNELL, and they agreed to charge $1,000 for the "chop." WHITLEY then left that location. HUDNELL remained behind and continued to discuss MCD purchases and sales and how to ensure profitability.

10. At approximately 6:26 p.m., WHITLEY returned. UC1 opened the rear hatch of the UCV so that he/she could inspect the firearm WHITLEY brought back. WHITLEY had previously indicated that the firearm he went to retrieve was a full-auto AR-style pistol. WHITLEY pulled his vehicle to the rear of the UCV where UC1, the CI, and HUDNELL were standing. WHITLEY exited his vehicle and retrieved a black duffle bag, which contained a firearm, handing it to UC1. As UC1 began to examine the firearm, WHITLEY expressed concern about where they were conducting the transaction and that they were in full view of the Jacksonville Sheriff's Office sub-station across the street. UC1 acknowledged this, and UC1, WHITLEY,

and the CI got back into the UCV. Once inside the UCV, WHITLEY removed the firearm from the duffle bag, removed the loaded magazine from the magazine well, and cleared the chamber to demonstrate it was not loaded. WHITLEY proceeded to separate the upper from the lower receiver to expose the internals of the firearm. WHITLEY then began to explain the internal modifications that had been made to convert the AR-style pistol to be able to fire in the fully automatic position. WHITLEY stated "…it's a two-position safety….just fire and fully…no FRT…no forced reset…" As WHITLEY placed the firearm back in the duffle bag, he asked for the phone number of one of the UCs, stating, "…I can get any gun really…" UC1 counted out $1,000 and continued to discuss future firearms purchases from WHITLEY. WHITLEY indicated that he wasn't always in the know about what HUDNELL was trying to facilitate and would rather deal directly with the UCs to ensure future transactions run smoothly. He also wanted to improve the quality of the information being disseminated. UC1 finished counting out the money and handed it to WHITLEY, asking him to count it for accuracy. UC1 asked WHITLEY for his name and cell phone number. WHITLEY replied that his name is "Herb," and his number is 904-XXX-5134. WHITLEY exited the UCV, and the UCs and CI exited the parking lot.

11. On September 1, 2026, I contacted an ATF Industry Operations Investigator (IOI) who has access to the ATF National Firearms and Transfer Record (NFRTR) database to confirm whether HUDNELL and WHITLEY had any

applications or approved documents to possess, to transfer, and register any firearms to any person as required by 26 U.S.C. §§ 5811 and 5812. I know that the NFRTR is the central records registry for all firearms not in the possession or under the control of the United States, which come within the purview of Title 26. I learned that neither HUDNELL nor WHITLEY have any approved applications to possess, make, or transfer any firearms within the purview of Title 26.

12. On September 1, 2026, I contacted Firearms Enforcement Officer (FEO) Oslyn Gardner from the ATF Firearms Ammunition and Technology Division (FATD) regarding the MCDs purchased from HUDNELL and WHITLEY. FEO Gardner analyzed photos of the two silver-colored MCDs purchased from HUDNELL and WHITLEY on August 20, 2026, and determined that the devices appear to be designed and intended for use in converting a weapon into a machinegun; therefore, the devices are each a "machinegun" as defined in 26 U.S.C. § 5845(b). Being machinegun, the devices from the August 20, 2026, controlled purchase from HUDNELL and WHITLEY are also "firearms" as defined in 26 U.S.C. § 5845(a)(6). The devices are also "machineguns" as defined in 18 U.S.C. § 921(a)(23). Further, the devices bear no NFA manufacturer's marks of identification or serial number as required by 26 U.S.C. § 5842.

## III. CONCLUSION

13. Based on the facts set forth in this affidavit, there is probable cause to believe that Derrick HUDNELL and Leondrel WHITLEY aided and abetted the

unlawful possession and transfer of machineguns, that is MCDs, in violation of 18 U.S.C. §§ 922(o) and 2. I further state that the above information is true and correct to the best of my knowledge. Therefore, I request the issuance of a criminal complaint for the arrest of HUDNELL and WHITLEY based on this affidavit.

Respectfully submitted,

______________________________
Eugene Tolbert, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn before me
this 9th day of September 2026,
in Jacksonville, Florida.

______________________________
SAMUEL J. HOROVITZ
United States Magistrate Judge